**STEVEN BAHARESTANI, *Pro Se***
**Plaintiff**
**Tennis Pl. 3**
**Akko, Israel**
**stevenbahar@gmail.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **STEVEN BAHARESTANI,**<br>*Plaintiff,*<br>-against-<br>**MITCHELL P. LIEBERMAN, ESQ., and LIEBERMAN & LIEBERMAN, PLLC,**<br>*Defendants.* | **Civil Action No.: 26-cv-04592 (NSR)**<br><br>AMENDED AND SUPPLEMENTAL COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND DEMAND FOR JURY TRIAL |

Plaintiff, **STEVEN BAHARESTANI** (hereinafter "Plaintiff"), proceeding *pro se*, brings this Amended and Supplemental Civil Rights Complaint (the “Amended Complaint”) pursuant to Fed. R. Civ. P. 15(a)(2) and 15(d), with leave **of Court**, against Defendants **MITCHELL P. LIEBERMAN, ESQ.** and the law firm of **LIEBERMAN & LIEBERMAN, PLLC** (hereinafter collectively "Defendants"), and respectfully alleges as follows:

## I. INTRODUCTION AND PRELIMINARY STATEMENT

1. This is a civil rights action arising under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983. This action seeks to remedy a continuous, malicious, and unconstitutional scheme orchestrated by the Defendants to weaponize the Plaintiff's sincerely held religious beliefs—specifically his adherence to Orthodox Jewish Sabbath (Shabbat) and High Holy Day observances—in order to obtain relief sought by his client in a NY Supreme court action.
2. The Constitution of the United States guarantees that no individual shall be forced to choose between the free exercise of their religion and the ability to participate in court. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963). In the underlying state-court matrimonial proceedings in Westchester County, New York, the Defendants deliberately engineered that exact unconstitutional choice. Knowing that the Plaintiff resides in Israel (seven hours ahead of Eastern Time) and requires a strict temporal window prior to sundown on Fridays to prepare for the Sabbath, the Defendants systematically manipulated the state court's scheduling apparatus to force evidentiary hearings and return dates into the Plaintiff's sacred religious blackout windows.
3. While Defendant Mitchell Lieberman is a private attorney, he shed his status as a mere legal advocate and acted under color of state law as a willful participant

in joint action with the state judiciary. This joint action was executed through a documented pattern of illicit *ex parte* communications, the submission of materially false drafted recitals to mislead judicial decision-makers, and the active exploitation of overtly hostile state-court justices. Specifically, the original presiding justice, the Honorable Thomas Quiñones, initiated and engaged in undisclosed *ex parte* communications with Defendant Lieberman, for which the New York State Commission on Judicial Conduct publicly admonished him.

4. Subsequently, Defendant Lieberman colluded with and actively exploited successor justices, most notably the Honorable Amy S. Puerto, who demonstrated overt, on-the-record hostility toward the Plaintiff's religious observance. By leveraging these compromised channels and hostile environments, Defendant Lieberman utilized Jewish observance as a convenient litigation shield to secure delays when it benefited his own agenda, while simultaneously deploying the state court's docketing power as a sword to punish the Plaintiff for his sincere religious adherence.

5. The Plaintiff brings this independent federal action not to appeal or overturn state-court domestic relations decrees, but to hold the Defendants accountable for their extrinsic, unconstitutional torts committed under color of state law. The Plaintiff seeks a declaration that the Defendants violated his constitutional

rights, together with compensatory, nominal, and punitive damages, for the profound, irreparable harm proximately caused by the Defendants' conduct, including the repeated burdening and coerced violation of his religious observance and severe emotional distress.

## II. JURISDICTION AND VENUE

6. The United States District Court possesses original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1343(a)(3) and (4) (Civil Rights Jurisdiction), as this civil action is brought to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States, specifically the First and Fourteenth Amendments, enforceable pursuant to 42 U.S.C. § 1983.
7. Furthermore, this Court possesses the authority to award attorneys' fees and costs to the prevailing party pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988. To the extent that the Plaintiff asserts any claims arising under the common law of the State of New York that derive from the same common nucleus of operative facts as the federal constitutional claims, this Court possesses supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is properly laid within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events, omissions, and unconstitutional joint actions giving rise to the Plaintiff's claims occurred within Westchester County, New York, which is situated within the geographical boundaries of the Southern District. Furthermore, venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants conduct their business and maintain their principal place of operation within this judicial district.

9. It is well-settled federal law that a private party acts "under color of state law" for the purposes of § 1983 when they are jointly engaged with state officials in the challenged action, or when they corruptly conspire with a judge. *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). The Plaintiff specifically alleges that the Defendants did not merely utilize neutral state-court procedures; rather, the Defendants acted under color of state law by engaging in improper *ex parte* communications, submitting fabricated recitals to mislead the court, and actively enlisting justices to execute a discriminatory strategy. To assist the Court in navigating the threshold statutory framework establishing jurisdiction over a private attorney, and demonstrating that the Plaintiff asserts independent constitutional torts entirely separate from the underlying domestic relations

dispute, the Plaintiff respectfully submits the following **Joint Action and State Action Matrix**:

| **Element of § 1983 Liability** | **Defendant Lieberman's Actionable Conduct** | **The Jurisdictional Implication** |
|---|---|---|
| **Color of State Law (Joint Action via Ex Parte Influence)** | Defendant Lieberman engaged in *ex parte* communications with Justice Quiñones that the Justice initiated and never disclosed, for which the CJC publicly admonished him; and in January 2026 Defendants placed an *ex parte* call to the court in this case (see Sections A and D). | Overcomes the "private actor" barrier under *Dennis v. Sparks*. A private attorney who corrupts the judicial process acts under color of state law. |
| **Color of State Law (Exploitation of Judicial Hostility)** | Defendant Lieberman actively participated in and capitalized on Justice Puerto's overt, on-the-record hostility toward the Plaintiff's Shabbat observance. | Acting in concert with a state official to deprive a citizen of religious rights constitutes actionable state action. |
| **Independent Constitutional Tort (*Rooker-Feldman* Inapplicable)** | Defendant Lieberman forced religious defaults *in absentia* via procedural manipulation. | The Plaintiff seeks damages for the *extrinsic* constitutional torts committed by a third-party attorney, an independent claim explicitly permitted under *Vossbrinck v. Accredited Home Lenders, Inc.* |

10. This Court therefore possesses clear subject matter jurisdiction to hear this controversy and grant the requested relief to remedy the Defendants' abuses of power.

11. This action does not seek review, reversal, vacatur, or modification of any state-court order or judgment, and it does not ask this Court to decide custody, parenting time, support, or any other domestic-relations question. Plaintiff does not ask this Court to enjoin, stay, or otherwise interfere with any pending state-court proceeding. The injuries for which Plaintiff seeks redress were caused by Defendants' own conduct—their *ex parte* communications with judges and chambers, the timing and manner of their service and filings, and their statements to the courts—and not by any state-court judgment. Plaintiff seeks damages from private parties for that conduct, and he does not seek in this action to recover any sum paid or owed under any state-court judgment or order.

## III. THE PARTIES

12. Plaintiff, **STEVEN BAHARESTANI**, is an adult individual currently residing in northern Israel. The Plaintiff is an observant Jew whose sincerely held religious beliefs strictly prohibit him from engaging in work, travel, litigation, or the use of electronics from approximately twenty (20) minutes prior to sundown on Friday until nightfall on Saturday (the Jewish Sabbath, or Shabbat), as well as during recognized Jewish High Holy Days. Like many observant Jews, the Plaintiff has taken on the Sabbath's obligations progressively, and his observance today is stricter than it was in 2022. The Plaintiff is the father of two minor children who presently reside in Westchester County, New York. The

Plaintiff's fundamental right to familial association and parental access has been unconstitutionally obstructed by the Defendants' intentional actions. Specifically, following a post-judgment custody dispute in 2022—arising from an instance where a four-day trip to Florida with the children was extended to eight days—Defendant Lieberman permanently exploited this event to sever the Plaintiff's access, systematically weaponizing the Plaintiff's Shabbat observance to continually prejudice and default him in the Westchester matrimonial court.

13. Defendant, **MITCHELL P. LIEBERMAN, ESQ.**, is an adult individual and an attorney duly licensed to practice law in the State of New York. At all times relevant hereto, Defendant Lieberman acted as counsel for the Plaintiff's former spouse in the underlying state-court matrimonial proceedings (Westchester County Supreme Court, Index No. 55877/2022, and the related habeas corpus proceeding, Index No. 56862/2022). In 2022, Defendant Lieberman practiced at the law firm of Cohen Clair Lans Greifer Thorpe & Rottenstreich LLP ("Cohen Clair"), where Steven A. Leshnower, Esq. also appeared with him as counsel for the Plaintiff's former spouse. While ostensibly a private actor, Defendant Lieberman is sued herein in his individual and professional capacities for acting under color of state law as a willful participant in joint action with the state judiciary to deprive the Plaintiff of his federally protected civil rights.

14. Defendant, **LIEBERMAN & LIEBERMAN, PLLC**, is a professional limited liability company organized and existing under the laws of the State of New York, with a principal place of business located at 7 Renaissance Square, 6th Floor, White Plains, New York 10601. Defendant Lieberman & Lieberman, PLLC is sued herein for its direct institutional role in financing, ratifying, and executing the unconstitutional, discriminatory litigation strategies engineered by Defendant Lieberman. The PLLC is liable for its own conduct: acting through Defendant Lieberman and Remy Lieberman, Esq., whom Defendant Lieberman introduced to the state court as "my partner," the PLLC appeared for the former spouse at the May 3 and June 9, 2023 conferences described in Section C (at the latter through Remy Lieberman, Esq. alone) and at the January 15 and January 23, 2026 conferences, placed the January 2026 *ex parte* call to the court described in Section D, and, upon information and belief, filed the May 7, 2026 cross-motion and the June 2, 2026 letter described in Section A.

*(Note: For the purposes of clarity and to avoid the confusing administrative labels of the underlying state court actions, the Plaintiff shall be referred to herein as "Plaintiff," the Defendants as "Defendant Lieberman" or "the Defendants," and the non-party state-court judges by their respective titles and names).*

## IV. ALLEGATIONS

### A. The Architect of the Deprivation: Joint Action, Ex Parte Communications, and the Ongoing Policy of Religious Disenfranchisement.

15. In the underlying matrimonial litigation, Defendant Lieberman transcended the role of a zealous advocate and became the chief architect of a state-sponsored deprivation of the Plaintiff's First and Fourteenth Amendment rights. Defendant Lieberman's unconstitutional influence over the state-court machinery was anchored in a profound, undisclosed communicative nexus. The objective, actionable reality of this joint action was cemented on October 3, 2024, when the New York State Commission on Judicial Conduct (CJC) issued a formal Determination publicly admonishing the original presiding justice in this matter, the Honorable Thomas Quiñones (**Exhibit A**). The Commission concluded that Justice Quiñones violated 22 N.Y.C.R.R. § 100.3(B)(6) "when he initiated and had ex parte communications with plaintiff's counsel"—Defendant Lieberman—in another matrimonial action pending before him (**Exhibit A**, at 10). Armed with this illicit, off-the-record access to the judiciary, Defendant Lieberman systematically weaponized the Plaintiff's observance of the Jewish religion, substituting the neutral adversarial process with a coordinated campaign of religious discrimination.

16. The Commission's records show how that channel operated. Defendant Lieberman and Justice Lewis J. Lubell of the same court "were friends who would socialize and occasionally meet for dinner." On August 19, 2022, Defendant Lieberman complained privately to Justice Lubell about Justice Quiñones's court attorney, Edit Shkreli, after a conference she had conducted in another matrimonial case. Justice Lubell then "suggested that Judge Quinones insulate Ms. Shkreli from handling any cases involving Mr. Lieberman or his firm." (**Exhibit B**, at 3–4.) The next day, Saturday, August 20, 2022, Justice Quiñones texted Defendant Lieberman—"Hey Mitch, this is Tom Quinones. I had a conversation with Judge Lubell last evening. Please let me know when you have a few minutes to chat."—and then told him that "he would be insulating Ms. Shkreli from all of his and his law firm's cases." (**Exhibit A**, at 6.)

17. At that time, the Plaintiff's case (Index No. 55877/2022) was pending before Justice Quiñones, and Defendant Lieberman and his firm represented the former spouse in it. By its terms, the arrangement Justice Quiñones made privately with Defendant Lieberman—insulating Ms. Shkreli from "all of his and his law firm's cases"—reached the Plaintiff's case. Neither Justice Quiñones nor Defendant Lieberman disclosed it to the Plaintiff. The Commission publicly

admonished Justice Quiñones on October 3, 2024, and separately admonished Justice Lubell on November 7, 2024. (**Exhibits A**, **B**.)

18. Justice Puerto's June 6, 2025 order denying the Plaintiff's motion to disqualify Defendant Lieberman predates, and therefore did not address, the January 2026 *ex parte* communication described in Section D, and that order is the subject of the Plaintiff's appeal to the Appellate Division, Second Department. The Plaintiff pleads the 2022 communications to show the off-the-record access on which Defendants' later conduct relied, not to relitigate disqualification.

19. Defendant Lieberman possessed actual, documented knowledge of both the Plaintiff's observance of the Sabbath and his physical residency in Israel (*see* **Exhibits C** and **D**). Defendant Lieberman knew with mathematical certainty that Israel operates on a time zone seven hours ahead of Eastern Time, meaning that Friday afternoon motion practice in New York collided directly with the onset of the Plaintiff's Sabbath in Israel. Utilizing this knowledge, Defendant Lieberman developed a continuous, ongoing policy of engineering procedural traps. He deliberately filed emergency applications and cross-motions to overlap with the Plaintiff's religious blackout periods, utilizing the resulting religiously induced absences to seek defaults and other adverse relief against him in his absence.

20. This unconstitutional weaponization of the Plaintiff's faith is not an isolated, historical grievance; it is a present-day, active policy that bridges the statute of limitations under the Continuing Violation Doctrine. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (holding that when a plaintiff experiences a continuous practice and policy of discrimination, the commencement of the statute of limitations is delayed until the last discriminatory act in furtherance of it).

21. This action is timely. Liability is predicated on acts occurring on or after May 31, 2023—three years before this action was commenced on or about May 31, 2026—including the June 9, 2023 proceeding and the August through October 2025 proceedings (Section C), the January 2026 *ex parte* call and Sabbath conference (Section D), and the May–June 2026 cross-motion and letter described below. Earlier events, including the 2022 *ex parte* communications described above, the February 2022 habeas corpus proceeding (Section B), and the May 3, 2023 conference (Section C), are pleaded as part of the same continuing policy and as background evidence of Defendants' knowledge, motive, and intent.

22. The most recent manifestation of this ongoing policy occurred in May and June 2026. On Thursday, May 7, 2026, at 10:25 p.m. Eastern Time, Defendant Lieberman electronically filed a hostile cross-motion seeking sanctions against

the Plaintiff, returnable at 9:30 a.m. on the immediately following Monday, May 11, 2026, with any answering papers demanded "one (1) day in advance of the return date" (**Exhibit E**). May 11 was the return date of the Plaintiff's own pending motion (Motion Sequence 29), but the timing of the cross-motion was Defendant Lieberman's choice. This late-night transmission reached the Plaintiff in Israel at approximately 5:25 a.m. on Friday, immediately preceding the pre-Shabbat preparation period. By timing his filing to create this severely abbreviated 83-hour window, Defendant Lieberman knew that the Plaintiff's strict, 25-hour religious observance would consume about thirty percent (30%) of the allotted response time, prejudicing the Plaintiff's ability to respond.

23. The court decided Motion Sequence 29 and the cross-motion in a Decision & Order dated May 13, 2026. When the Plaintiff sought reargument by proposed order to show cause (NYSCEF Doc. No. 1697), highlighting the extreme prejudice of this scheduling trap, Defendant Lieberman doubled down on his discriminatory animus. In a formal letter submitted to the state court on June 2, 2026 (**Exhibit F, NYSCEF Doc. No. 1707**), Defendant Lieberman overtly suggested that Plaintiff was not entitled to religious protections by suggesting the Plaintiff's religious observance is not deserving of the court's respect, stating: *"Assuming that Defendant does actually observe the Sabbath and is actually located in Israel as he claims, then Defendant had all day Friday, all*

*night Saturday, and all day and night Sunday to interpose opposition." He also called "absurd" the Plaintiff's claim that his Sabbath observance had prevented him from interposing opposition by Monday.* The Plaintiff immediately objected to this abusive rhetoric via correspondence on the same day (**Exhibit G, NYSCEF Doc. No. 1708**), placing the court and counsel on notice that the practical effect of this trap was to unconstitutionally "deprive me of a meaningful opportunity to oppose a sanctions/fee request before it was treated as unopposed." By inviting a newly assigned state-court judge to treat the Plaintiff's religious observance and location as suspect, Defendant Lieberman actively perpetuated his policy of trying to induce judicial partiality to benefit from abbreviated, religiously burdensome deadlines. To assist the Court in evaluating the objective evidence that satisfies both the § 1983 state action requirement and the timeliness of this action, the Plaintiff submits the following **Evidentiary Joint Action and Continuing Violation Matrix**:

| **The Constitutional/Jurisdictional Element** | **Defendant Lieberman's Actionable Conduct** | **The Objective Documentary Proof** |
|---|---|---|
| **Joint Action (Color of State Law)** | Defendant Lieberman had undisclosed *ex parte* communications with the presiding Justice, who then arranged to insulate his court attorney from all of Defendant Lieberman's cases, including the Plaintiff's. | **Exhibit A (CJC Determination):** The public admonition establishes that the presiding Justice initiated undisclosed *ex parte* communications with Defendant Lieberman and, after Defendant Lieberman's private complaint to another justice, told him that he would be insulating his court attorney from "all of his and his law firm's cases." |
| **Continuing Violation Doctrine (Timeliness)** | Defendant Lieberman intentionally engineered an 83-hour weekend response window, deliberately consuming the Plaintiff's 25-hour Sabbath. | **Exhibit E (May 7, 2026 NYSCEF Filing):** An active, present-day act in direct furtherance of the policy to weaponize the Plaintiff's religion. |
| **Discriminatory Animus** | Defendant Lieberman utilized state-court filings to mock and cast suspicion upon the validity of the Plaintiff's religious adherence. | **Exhibit F (NYSCEF Doc. 1707):** Lieberman's June 2, 2026 letter ("Assuming that Defendant does actually observe the Sabbath...") constitutes overt hostility. |

24. To visually establish the causal link between Defendant Lieberman's historical corruption of the judicial machinery and his present-day enforcement of this

discriminatory policy, the Plaintiff provides the following **Timeline of Continuous Constitutional Deprivation Diagram**:




Exhibit references are to the Amended Complaint's exhibit bundle.

25. Having established the timeliness of this action and the presence of unconstitutional joint action, the Plaintiff now turns to the specific, historical instances of deprivation that culminated in the catastrophic loss of his liberty.

**B. The February 2022 Habeas Corpus Ambush: Defendant Lieberman's Initial Weaponization of the State-Court Apparatus to Deprive Plaintiff of Due Process and Free Exercise of Religion.**

26. The fundamental guarantee of the Due Process Clause of the Fourteenth Amendment is the right to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). In February 2022, Defendant Lieberman intentionally subverted this constitutional guarantee, leveraging the *ex parte* emergency procedures of the Westchester County Supreme Court to execute a calculated litigation ambush engineered specifically to exploit the Plaintiff's Orthodox Jewish observance.

27. During the winter break of February 2022, the Plaintiff was legally traveling with his minor children in the State of Florida. The Plaintiff was not concealing the children, nor was he restricting his former spouse from interacting with them. As documented in the Plaintiff's contemporaneous communications, the Plaintiff's former spouse had communicated daily with the children via FaceTime and directed local law enforcement to conduct a wellness check, which conclusively confirmed the children's safety. Consequently, Defendant Lieberman possessed absolute, objective knowledge of the children's precise

location and well-being, negating any genuine, emergent threat that would justify the suspension of standard procedural due process.

28. The documentary record establishes that the Plaintiff maintained constant, transparent communication regarding unexpected travel disruptions. On Wednesday, February 23, 2022, the Plaintiff explicitly informed his former spouse via email that he was suffering from illness and had rebooked their flight: *"I already communicated with you this afternoon that I'm not feeling well and we didn't get on the flight. I was able to rebook a flight for Friday getting in midday."* (**Exhibit H-1**). On February 24, 2022, the Plaintiff sent further correspondence reminding her that the upcoming weekend belonged to his parenting time (**Exhibit H-2**). On the morning of Friday, February 25, 2022, the Plaintiff provided a real-time update detailing severe weather-related flight cancellations, explicitly writing: *"that flight was canceled and trying to rebook. Right now I took a flight for Monday but trying my best to get a Sunday return flight."* (**Exhibit H-2**).

29. Despite possessing the Plaintiff's February 23 updates regarding his illness and rebooked Friday flight (which the petition itself quotes), and knowing that the children were safe, Defendant Lieberman elected to initiate a highly aggressive, *ex parte* emergency habeas corpus proceeding. The petition, signed by Defendant Lieberman's co-counsel, Steven A. Leshnower, Esq., was filed on

NYSCEF at 3:17 p.m. on Thursday, February 24, 2022 (**Exhibit I-6**), but was not sent to the Plaintiff that day. Instead, even after the Plaintiff reported on Friday morning that his flight had been cancelled by weather (**Exhibit H-2**), acting with deliberate, discriminatory animus, Defendant Lieberman waited until after the signed writ was filed at 3:56 p.m. on Friday, February 25, 2022, and then timed every method of service so that the papers would reach the Plaintiff, at the earliest, approximately one hour before the onset of the Sabbath, and otherwise on the Sabbath itself (**Exhibit I**).

30. Defendant Lieberman, serving as a joint participant with the state court, knew that the Plaintiff was Sabbath-observant. On November 19, 2021, the Plaintiff had written to Defendant Lieberman directly, copying his co-counsel Steven A. Leshnower, Esq., that a 5:00 p.m. Friday call with the children "now falls after sundown" and that "[b]eing Sabbath observant this makes it impossible for me to speak to the kids on Fridays" (**Exhibit C**). Defendant Lieberman also knew that the Plaintiff was then in Boca Raton, Florida (his firm shipped one set of the habeas papers to the Plaintiff's Boca Raton address, **Exhibit I-3**), where candle-lighting, marking the onset of the Sabbath, was at approximately 6:01 p.m. that Friday and sunset at approximately 6:19 p.m. (**Exhibit I-7**). By manipulating service so that the only method capable of reaching the Plaintiff in real time arrived approximately one hour before the Sabbath began, and every

other method was timed to arrive on the Sabbath itself, while securing a state court order demanding an in-person return appearance on the morning of Monday, February 28, 2022, at 9:30 a.m., Defendant Lieberman effectively stripped the Plaintiff of any meaningful response time.

31. Defendant Lieberman's own filings and service papers, together with published sunset times, fix the sequence precisely (all times Eastern Time): (a) at 3:56 p.m. on Friday, the signed Writ of Habeas Corpus was filed on NYSCEF (Index No. 55877/2022, NYSCEF Doc. No. 28), commanding the Plaintiff to produce the children before Justice Quiñones in White Plains at 9:30 a.m. on Monday, February 28, 2022 (**Exhibit I-1**); (b) at 4:56 p.m., Defendant Lieberman emailed the Plaintiff, copying Mr. Leshnower, "for service upon you," attaching a single PDF file titled "2022.02.25 PETITION - Petition for Writ of Habeas Corpus [NYSCEF 1].pdf" of approximately 30 megabytes, containing the signed Writ followed by the petition, its exhibits, and the request for judicial intervention, 96 pages in all (**Exhibits I-2**, **I-6**); (c) at approximately 6:01 p.m., candle-lighting marked the onset of the Sabbath in Boca Raton (**Exhibit I-7**); (d) at 6:09 p.m., after candle-lighting, an affidavit was filed reciting that the papers had been deposited with Federal Express in Manhattan for "Priority Overnight - Saturday Delivery" to the Plaintiff's Boca Raton and Great Neck addresses, with shipping labels (listing a sender at Cohen Clair's White Plains

office address) bearing a "SATURDAY 12:00P" delivery commitment (NYSCEF Doc. No. 29) (**Exhibit I-3**); (e) at 6:40 p.m., Defendant Lieberman's affirmation of service by email was filed (NYSCEF Doc. No. 30) (**Exhibit I-4**); (f) at 1:50 p.m. on Saturday, February 26, 2022, in the middle of the Sabbath, a process server retained by Cohen Clair taped the Writ to the side door of the Plaintiff's residence at 10 Whitman Road, Great Neck, New York, more than 1,000 miles from where Defendant Lieberman knew the Plaintiff and the children were, and the affidavit of that service was not filed until 12:31 p.m. on Monday, February 28, 2022, three hours after the return time (NYSCEF Doc. No. 31) (**Exhibit I-5**); and (g) at approximately 6:55 p.m. on Saturday, nightfall marked the end of the Sabbath in Boca Raton (**Exhibit I-7**).

32. Of the three methods of service chosen, email was the only one capable of reaching the Plaintiff in Florida in real time. The Plaintiff was then unrepresented and was not a registered NYSCEF user, so the NYSCEF filings themselves generated no notice to him. Yet although the petition had been on NYSCEF since 3:17 p.m. on Thursday, February 24, 2022, as Document No. 1 under Index No. 56862/2022 (**Exhibit I-6**), and the signed Writ was on NYSCEF no later than 3:56 p.m. on Friday, Defendant Lieberman withheld the email until 4:56 p.m. on Friday, approximately one hour before candle-lighting in Boca Raton and squarely within the Plaintiff's pre-Sabbath preparation

window, and attached a single 96-page file that could not reasonably be read, let alone answered, before the Sabbath began. Upon information and belief, this timing was deliberate: Defendant Lieberman knew that email was the one channel the Plaintiff would actually see before the Monday return date, and he timed it to arrive during the Plaintiff's pre-Sabbath preparations, when the Plaintiff could not meaningfully review the papers, respond to them, or arrange travel before the Sabbath began.

33. The other two methods were timed to land on the Sabbath itself. Defendant Lieberman's firm selected FedEx's "Saturday delivery" special service, with a "SATURDAY 12:00P" delivery commitment, for packages addressed to a person whom Defendant Lieberman knew, in writing, to be Sabbath-observant (**Exhibits C**, **I-3**). And, upon information and belief, rather than attempt personal delivery in Florida, at the very Boca Raton address to which his firm shipped the papers, Defendant Lieberman caused a process server to tape the Writ to the side door of the Plaintiff's Great Neck residence at 1:50 p.m. on Saturday, a place where he knew the Plaintiff was not and could not see it before the Monday return time (**Exhibit I-5**). The process server's affidavit recites only that a copy of the Writ was affixed and taped to the door; it recites no attempt at personal delivery, no concealment or refusal of admittance, no service of the petition, and no mailing (**Exhibit I-5**). Yet CPLR 7005 permits

service by affixing only "[w]here the person to whom the writ is directed conceals himself or refuses admittance," and then requires that the writ be affixed together with "a copy of the petition" and that both be mailed, unless the issuing court directs otherwise; the Writ contains no such direction (**Exhibit I-1**). The overnight FedEx shipment (**Exhibit I-3**) was not a "mailing" as the CPLR defines that term, *see* CPLR 2103(f)(1)–(2), and it too was timed to arrive on the Sabbath. Service so arranged was not "reasonably calculated, under all the circumstances, to apprise" the Plaintiff of the proceeding and "afford [him] an opportunity to present [his] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see id.* at 315 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). New York law has long condemned the malicious Saturday service of process on Sabbath observers. *Cf.* N.Y. Gen. Bus. Law § 13 (making it a misdemeanor to "maliciously procure[] any process in a civil action to be served on Saturday, upon any person who keeps Saturday as holy time").

34. The Plaintiff was legally, spiritually, and administratively paralyzed. His deeply held religious tenets strictly prohibited him from reviewing the allegations, drafting an opposition, or retaining legal counsel during the core Sabbath period from candle-lighting at approximately 6:01 p.m. on Friday until nightfall at

approximately 6:55 p.m. on Saturday (**Exhibit I-7**). Compounding this unconstitutional religious burden was an administrative abuse of process engineered by Defendant Lieberman: because the New York State Courts Electronic Filing (NYSCEF) system requires an unrepresented litigant to contact the clerk's office during business hours to establish an account, the Friday afternoon service immediately followed by the weekend completely barred the Plaintiff from accessing the electronic docket. To assist the Court in evaluating the sheer magnitude of the procedural and constitutional deprivation inflicted by this targeted Friday service, the Plaintiff submits the following **Unconstitutional Notice and Due Process Analysis Matrix**:

| **The Constitutional Requirement** | **Defendant Lieberman's Actionable Conduct** | **The Resulting § 1983 Civil Rights Deprivation** |
|---|---|---|
| **Meaningful Opportunity to be Heard** | The "emergency" petition was filed at 3:17 p.m. on Thursday, Feb. 24, after the Feb. 23 emails reporting the illness and the rebooked Friday flight, but Lieberman withheld it from the Plaintiff until 4:56 p.m. Friday (**Exhibits I-2**, **I-6**). | Destroyed the standard weekend preparation period, knowing the Plaintiff's religious adherence rendered the weekend legally unworkable. |
| **Free Exercise of Religion** | Withheld email service until 4:56 p.m. on Friday, knowingly weaponizing the ticking clock of the imminent 6:01 p.m. Sabbath (candle-lighting in Boca Raton), and timed FedEx | Imposed an unconstitutional burden, forcing the Plaintiff to choose between his Sabbath observance and a default on a habeas petition. |

| | | |
|---|---|---|
| | delivery and door-affixing to land on the Sabbath itself. | |
| **Access to Courts** | Exploited the Plaintiff's *pro se*, out-of-state status, and lack of NYSCEF credentials during a 25-hour religious and administrative blackout period. | Leveraged the state court machinery to execute a "litigation ambush," ensuring the Plaintiff would appear unrepresented, unprepared, and highly prejudiced. |

35. Because Defendant Lieberman maliciously concealed the context of the Plaintiff's religious observance from the state court, the state court facilitated this ambush. The Plaintiff undertook extraordinary measures to comply with the unconstitutional trap, exhausting approximately $2,000 worth of travel points to secure a Sunday night flight solely to ensure compliance with the Monday morning mandate. On Monday morning, February 28, 2022, the Plaintiff safely returned the children to their school prior to the opening bell, as he had advised Defendant Lieberman by email the night before, in the same email that transmitted his affidavit in response and reported that he had requested NYSCEF registration credentials but anticipated that he might not receive them before the hearing (**Exhibit J**). To visually demonstrate the calculated, predatory nature of Defendant Lieberman's scheduling tactics, which transformed a state court procedure into a weapon of religious disenfranchisement, the Plaintiff submits the following **Tactical Ambush Timeline Diagram**:




Sources: NYSCEF Doc. Nos. 28–31 (Index No. 55877/2022) (Ex. I-1, I-3, I-4, I-5); NYSCEF Doc. No. 1 (Index No. 56862/2022) (Ex. I-6); Lieberman service email (Ex. I-2); Hebcal calendar for Boca Raton, FL (Ex. I-7).

36. To the extent any act described in this Section B is deemed a discrete act falling outside the applicable limitations period, it is pleaded both as part of the continuing policy described in Section A above and as relevant background evidence of Defendant Lieberman's knowledge of the Plaintiff's religious observance, and of his motive and discriminatory intent in the timely acts alleged herein. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (prior acts may be used "as background evidence in support of a timely claim").

**C. The May-June 2023 Ambushes and the Exploitation of Judicial Hostility During the Puerto Era.**

37. Defendant Lieberman's unconstitutional joint action escalated significantly throughout 2023 and 2025. Rather than abandoning his discriminatory tactics, Defendant Lieberman actively misled successor judges or consciously exploited the overt religious hostility demonstrated by the bench to secure his litigation objectives.

38. On May 3, 2023, during a conference before the Honorable James L. Hyer, J.S.C. (**Exhibit K**), the state court proposed a status conference on June 9 at 2:00 p.m. Defendant Lieberman knew with absolute certainty that June 9 was a Friday, and that a 2:00 p.m. Eastern Time conference translated to 9:00 p.m. Israel time—deep into the Plaintiff's sacred Sabbath observance. Rather than upholding his duty of candor to the tribunal, Defendant Lieberman actively

embraced and locked in the unconstitutional trap. In a staggering display of hypocrisy, Defendant Lieberman asked the court to keep the afternoon setting for his own personal reasons, stating: *"Can we have the afternoon? My oldest grandchild is moving up that morning."* (**Id.**). Later in the same conference, after the June 9 date was set, Defendant Lieberman affirmatively lied to the state court regarding the Plaintiff's geographic location, stating: *"He claims he is in Israel. I have no idea. We don't believe he is in Israel. We believe he is in New Jersey."* (**Id.**).

39. That misrepresentation left Justice Hyer with no reason to revisit the Friday afternoon setting in light of the seven-hour time differential. The severe prejudice meticulously orchestrated by Defendant Lieberman materialized on Friday, June 9, 2023. In the Plaintiff's absence, Defendants, appearing through Remy Lieberman, Esq. of Defendant Lieberman & Lieberman, PLLC, utilized the proceeding to seek draconian, *ex parte* relief, falsely suggesting that the Plaintiff *"may be in the area at this point,"* and demanding a "full stay away temporary order of protection" *in absentia, which the court said it was "inclined to grant."* (**Exhibit L**).

40. The unconstitutional weaponization of the Plaintiff's faith reached its zenith following the assignment of the Honorable Amy S. Puerto. Justice Puerto inherited a case heavily infected by Defendant Lieberman's prior *ex parte*

framing. Crucially, the state court was already operating under a binding, prior directive issued on August 3, 2023, which explicitly guaranteed the Plaintiff's right to remote access: *"[E]very future appearance before this court, okay, will be accompanied by a virtual link where any party can appear virtually."* (**Exhibit M, at 34:24–35:1**). The court issued that directive over the objection of Remy Lieberman, Esq. of Defendant Lieberman & Lieberman, PLLC, who argued that the Plaintiff should not be allowed to appear virtually. (*Id.* at 33:20–34:10.)

41. Despite this standing directive and multiple filings putting the Court on notice of the Plaintiff's Sabbath observance and residence in Israel (UTC+3), the weaponization accelerated. On August 12, 2025, Justice Puerto issued a court notice (**Exhibit N-1**) scheduling a virtual conference for Friday, August 15, 2025, at 11:00 a.m. Eastern Time. The Plaintiff promptly transmitted correspondence on August 13, 2025 (**Exhibit N-2**), reminding the Court of the seven-hour time difference and detailing the strict, time-consuming nature of his pre-Sabbath preparations, which include walking to the Synagogue. While the start time was adjusted to 9:30 a.m. Eastern Time (4:30 p.m. Israel Time) at the Plaintiff’s request “due to religious obligations” (**Exhibit N-3**, NYSCEF Doc. No. 1133), the court delayed the commencement of the Friday conference by approximately forty (40) minutes. When it began, the Plaintiff told the court

that he had been "given less than 48 hours to arrange child care on a Friday afternoon, when most of my community are preparing for the sabbath," that he could not "meaningfully participate," and asked that any conference be set on "somewhat advance notice, not on a Friday, please." (**Exhibit N-4**, at 4:15–18, 7:5–13.) Rather than supporting an adjournment of the matter to a neutral, non-Friday date, Defendant Lieberman actively prolonged the hearing: he answered that if the Plaintiff "has a problem appearing virtually and can't accommodate this, then he should be in court," that "[t]he only reason he's having this difficulty is it's self-imposed," and he then argued at length about the Plaintiff's appeal and anticipated motion to vacate until the Plaintiff left the virtual courtroom and the court adjourned (*Id.* at 7:22–8:3, 8:16–12:17), consciously driving the litigation directly into the Plaintiff's sacred pre-Sabbath window.

42. Defendant Lieberman's discriminatory tactics were then maliciously expanded to encompass the holiest days of the Jewish calendar. When the Plaintiff requested a reasonable enlargement of time to submit responsive papers for Motion Sequence 22, explaining that his deadline fell during the High Holy Days and asking for an extension to the "first week of November," three weeks after the holidays ended, the state court extended his deadline of Wednesday, October 1, 2025—the eve of Yom Kippur—by a mere five days, to Monday,

October 6, the eve of Sukkot; two of those days were entirely consumed by Yom Kippur and Shabbat (**Exhibit O**, NYSCEF Doc. Nos. 1193, 1236, 1238). Given the seven-hour time difference and his *pro se* status, this effectively left the Plaintiff with only Sunday as a full working day. Defendant Lieberman had refused the Plaintiff's request for his consent to a thirty-day extension, writing on September 9, 2025 that "Yom Kippur does not interfere with this date as it starts at sun down on October 1" and that his client was "not in a position to consent" (**Exhibit O-1**). In Israel, where the Plaintiff lives, Yom Kippur began at 6:04 p.m. on October 1, which was 11:04 a.m. in New York, and Sukkot began at 5:57 p.m. on October 6, which was 10:57 a.m. in New York (**Exhibit R-3**).

43. The absolute climax of this discriminatory animus occurred on Friday, October 10, 2025, the return date of Defendant Lieberman's contempt motion, Motion Sequence 22 (**Exhibit O**). The Plaintiff was directed to appear virtually at 10:00 a.m. Eastern Time. At 9:57 a.m., **(Exhibit P-1)** as he signed in, he wrote to chambers that he was "signing in now but Sabbath starts very soon and i will not be able to stay in very long, especially if it doesnt start exactly at 10am." (**Exhibit P-1**.) After languishing in the virtual waiting room for over twenty minutes, the Plaintiff emailed chambers from Israel at 10:21 a.m. Eastern Time, as the conference opened, copying Defendant Lieberman (**Exhibit P-1**; **Exhibit**

**P-2**, at 2:24–3:1). He explained that he refrains from work "from 20 minutes before sunset Friday until after nightfall Saturday," that Defendant Lieberman, though "fully aware of the Sabbath's meaning," had "at times sought to use my observance against me in scheduling," and that he was "available any day other than Friday or Saturday" and would "appreciate the Court's consideration to avoid late Friday afternoon New York time, which overlaps with my Sabbath." (**Exhibit P-1**.) Both emails' headers carry a "-0700" (U.S. Pacific) time-zone offset, reflecting the setting on the Plaintiff's computer at the time; read with that offset, they would appear to have been sent three hours later, after the Sabbath had begun in Israel, but the transcript confirms that the second email went out as the conference opened, minutes before the Plaintiff told the court that it was 5:28 p.m. where he was. (**Exhibit P-2**, at 2:24–3:1, 8:1–2.)

44. When the Plaintiff was finally admitted to the virtual courtroom less than an hour before the commencement of Shabbat, he respectfully stated on the record that he could not meaningfully participate because the delayed conference was actively overlapping with his pre-Sabbath window. As the transcript confirms (**Exhibit P-2**, at 7:23–8:3, 8:18–23, 9:12–10:5, 12:4–7), the Plaintiff attempted to explain that Orthodox Jews accept the Sabbath at least eighteen (18) minutes prior to sundown, and because of the required preparation, working up to the literal minute of sunset violates his faith. Justice Puerto erupted in open

hostility, demanding that the Plaintiff declare the exact, geographical minute of sundown as if he should be forced to litigate right up to the absolute precipice of the Sabbath—"My question to you is what time is sundown? That's the time Sabbath starts. What time does it start and that's when we'll end?"—and then repeatedly cutting him off, aggressively silencing the Plaintiff's religious plea: "No, you don't, Mr. Baharestani. What time is sundown?"; "I don't need any further explanation"; and, in a loud and belligerent tone, "Stop. Okay. Stop. Stop." (*Id.* at 8:10–17, 10:6–7, 10:24.)

45. Defendant Lieberman stood by, silently ratifying this state-sponsored religious hostility, and immediately capitalized on the court's ire. To assuage the Court's anger, the Plaintiff offered an unlimited concession of his time, stating on the record that "it all finishes on the 15th" and that he could "spend three hours on a conference any time after the 15th." (**Exhibit P-2**, at 10:11–19.) Rather than a date after the 15th, the court asked Defendant Lieberman whether the parties could "come back" at 9:30 a.m. on the 15th itself—Wednesday, October 15, 2025, the day Simchat Torah was being observed in New York. (*Id.* at 10:25–11:1.) Displaying flagrant retaliatory animus, Defendant Lieberman then asked to be heard and, to maximize the likelihood of the Plaintiff's default, demanded that the Plaintiff be stripped of virtual access: "That we be here live and in color. . . . That we be here not on a virtual that we be here in person. . . .

And the problem is what happened last time." The court answered "Yes" to each request and—"since your holidays are over"—required the Plaintiff's personal appearance at 9:30 a.m. on October 15. (*Id.* at 11:2–21.) When the Plaintiff answered that this "would be impossible," the court adjourned. (*Id.* at 11:22–12:17.)

46. At 8:22 a.m. on October 15, 2025, before the conference, the Plaintiff filed a letter explaining that Shemini Atzeret/Simchat Torah in Israel had ended only at sunset the night before, so that there was "no feasible itinerary that would have departed after the holy days" to bring him to the courtroom by 9:30 a.m., and asking that future conferences be set Monday through Thursday or, on a Friday, before 10:00 a.m. Eastern Time. (**Exhibit P-3**, NYSCEF Doc. No. 1374.) At the conference, the Plaintiff logged in virtually from Israel, and the court, reading his letter, acknowledged that it had been "probably impossible" for him to be in court that morning. (**Exhibit Q**, at 2:2–3, 3:14–4:17.) Although the Plaintiff was ready, willing, and able to proceed virtually—in strict accordance with the court's August 3, 2023 standing directive permitting virtual participation at all conferences (**Exhibit M**)—Justice Puerto, exhibiting visible ire and condescension, refused to proceed, ruling that she was "exercising [her] discretion to deny any future appearances from being virtual." (**Exhibit Q**, at 4:24–5:8, 11:13–12:3.) When the Plaintiff answered that he would not be

appearing in person but was "ready, willing and able to participate" on any day other than a Friday, the court turned to Defendant Lieberman and the attorney for the children for a date; Defendant Lieberman answered, "The 20th works for us," and the court ordered the Plaintiff to appear in person on Monday, October 20, 2025, without a virtual link. (**Exhibit Q**, at 13:3–14:16.) By exploiting the court's hostility, Defendant Lieberman converted the Plaintiff's religious observance into a fatal litigation liability. To assist the Court in evaluating the systemic, targeted nature of Defendant Lieberman's First and Fourteenth Amendment violations across both the Hyer and Puerto eras, the Plaintiff submits the following **Evidentiary Proof of Discriminatory Intent Matrix**:

| **The Sacred Observance / Constraint** | **Defendant Lieberman's Actionable Conduct (Joint Action)** | **The Resulting § 1983 Deprivation** |
|---|---|---|
| **May 2023 Shabbat Trap** | Accepted the court's Friday 2:00 p.m. setting, asked to keep the afternoon for his grandchild's event, and then told the court the Plaintiff was in New Jersey. | **Fourteenth Amendment Deprivation:** Left the Friday setting uncorrected and misstated the Plaintiff's location, then sought a full stay-away order in absentia. |
| **Yom Kippur & Shabbat** (Fall 2025) | Refused consent to a 30-day extension, writing that "Yom Kippur does not interfere with this date" (**Exhibit O-1**); the court then allowed only five days, to the eve of Sukkot (**Exhibit O**). | **First Amendment Violation:** Imposed an unconstitutional penalty on the Plaintiff for observing his faith, forcing a choice between religious adherence and default. |

| | | |
|---|---|---|
| **Pre-Sabbath Preparations** (Oct. 10, 2025) | Silently ratified Justice Puerto's “What time is sundown?” interrogation and “Stop. Okay. Stop. Stop.” (**Exhibit P-2**), then asked that the next appearance be “not on a virtual” but “in person,” utilizing the resulting hostility to extract his desired scheduling default. | **Hostile Environment:** Fostered and exploited an unconstitutional atmosphere of religious intolerance to secure a tactical advantage. |
| **Simchat Torah** (Oct. 15, 2025) | Seized on the Plaintiff’s statement that his holidays ended on the 15th to demand that the next appearance be “not on a virtual” but “in person” (**Exhibit P-2**, at 11:10–16), intentionally violating the court's prior virtual-access directive (**Exhibit M**). | **Unconstitutional Condition:** Penalized the Plaintiff’s free exercise of religion by rendering his participation legally and spiritually impossible. |

47. To visually encapsulate how Defendant Lieberman weaponized the state court apparatus to convert the Plaintiff's religious observance into actionable procedural defaults across multiple judges, the Plaintiff provides the following **Sequence of Exploitation Diagram**:




**D. January 2026: Defendants' *Ex Parte* Call to the Newly Assigned Justice, and Their Use of the Plaintiff's Sabbath Absence Before Justice Squirrell.**

48. Following Justice Puerto's recusal, the case was reassigned to the Honorable David J. Squirrell, J.S.C., who convened an initial appearance on Thursday, January 15, 2026. Justice Squirrell stated at the outset: "We will not be having any hearings today because I was just assigned this case very late in the day, and also, I'm not entirely sure it will stay with me." (**Exhibit R-1**, at 2:23–25.) Defendant Lieberman appeared with Remy Lieberman, Esq., whom he introduced as "my partner." (*Id.* at 3:20–23.) Defendant Lieberman told the new Justice that the Plaintiff "claims to be in Israel," and announced that Defendants

were preparing a motion to have the Plaintiff declared subject to the "fugitive disentitlement doctrine." (*Id.* at 6:4–5, 8:17–9:4.)

49. When the court asked about hearing dates the following week, the attorney for the children offered "the 23rd in the afternoon," and Defendant Lieberman answered, "I'm good on all three of those days." (*Id.* at 13:21–14:3.) The attorney for the children then cautioned the court on the record: "the 23rd is a Friday and I don't know that this Court wants to get involved in that argument, but Mr. Baharestani has made arguments previously that it is Shabbos in the Jewish religion and it may be not prudent to schedule a Friday." (*Id.* at 14:7–11.) The court passed over Friday, January 23, and set the hearing for Tuesday, February 17, 2026. (*Id.* at 14:12–23, 15:12–13.) The court then asked whether counsel would both be in the building over the next two weeks in case a "five- to ten-minute very quick conference" became necessary. When the attorney for the children said she would be in the building all day on Friday, January 23, Defendant Lieberman answered: "Same. I'm either in here or I'm just across the street at our office." (*Id.* at 15:2–8, 15:25–16:8.) Defendant Lieberman then asked the court to confirm that "personal appearances" at the hearing meant that "the body, in person, is in the courtroom, not on a virtual," and the court answered, "Yes." (*Id.* at 15:19–22, 16:14–17.)

50. The Friday date returned the same day, after a conversation the Plaintiff was not part of. At 12:38 p.m. on January 15, the court's principal law clerk filed a letter, written at the court's direction "in follow-up to today's Court appearance as well as the brief off the record conversation between the Court's Principal Law Clerk, Plaintiff's Counsel [Defendants' firm] and the Attorney for the Child regarding the procedural history of this matter," announcing that "[t]he Court is scheduling a pre-hearing conference on January 23, 2026, at 10 a.m." and that "[a]ll parties are required to appear in-person." (**Exhibit R-4**, NYSCEF Doc. No. 1427.) On Tuesday, January 20, 2026, the court issued a notice stating: "Upon review of the procedural history and docket in this matter, the Court is proceeding with the pre-hearing conference scheduled for January 23, 2026, at 10 a.m. via Microsoft Teams." (**Exhibit R-2**, NYSCEF Doc. No. 1429.) Ten o'clock in the morning in New York on Friday, January 23, 2026 was 5:00 p.m. in northern Israel, where the Plaintiff lives—after candle-lighting there (4:43 p.m.), and so after the Sabbath had begun for him. (**Exhibit R-3**.)

51. At the January 23 conference, the court described what had happened as "a very brief *ex parte* communication" by Defendants' firm "after our last appearance," whose substance "was later put into a letter" from the firm "as to which motions were going to be the subject of which hearing." (**Exhibit R-5**, at 3:13–24.) Upon information and belief, that communication is the January 15

off-the-record conversation described in the law clerk's letter, after which the Friday conference was scheduled (**Exhibit R-4**); its full content is within Defendants' knowledge and has not been disclosed to the Plaintiff.

52. The court convened the conference on Friday, January 23, 2026, without the Plaintiff, who had advised the court in writing at 7:19 a.m. that morning that he resides in Israel, is Sabbath-observant, and, because of the time difference, could not participate even virtually, and who had asked the court to confirm that his inability to appear on Fridays "will not be construed as willful noncompliance, and that no adverse inference, sanction, default, or other penalty will be sought or imposed based solely on religious observance." (**Exhibit R-6**, NYSCEF Doc. No. 1448; **Exhibit R-5**, at 3:25–4:5.) The court disclosed Defendants' *ex parte* call on the record (**Exhibit R-5**, at 3:16–24), and Defendant Lieberman acknowledged it: "We thought a calendar issue was probably better served with a phone call. I apologize. It will be only by email on future calendars." (*Id.* at 5:20–22.)

53. The court announced that it would adjourn the conference to Thursday, January 29, "given the fact that the defendant is a Sabbath observant and he's in a location where I think they're seven hours ahead," and said it wanted to keep the conference short "based upon the representation from defendant that there are religious reasons why he can't participate." (*Id.* at 4:6–11, 5:11–14.)

Defendant Lieberman nonetheless asked to be heard, and he used the Plaintiff's Sabbath-induced absence to argue against him. He told the newly assigned Justice that the Plaintiff "continues to seek to take advantage of the processes available to litigants in this jurisdiction, but he's not subject to this jurisdiction because he fails to appear over and over again," that he "has defaulted repeatedly," and that "it appears to us that this litigant is in fact subject to the Fugitive Disentitlement Doctrine." He asked the court to consider that doctrine when deciding a pending motion (Motion Sequence 21) "in light of his absence," and to "reiterate in a written directive that the hearing scheduled for sequence 18 nonetheless requires his personal appearance." (*Id.* at 4:16–18, 6:11–7:18.) By then, $225,000 had already been paid on the Plaintiff's behalf toward the money judgment entered against him in that action (Index No. 55877/2022), by a check that cleared on September 25, 2024. A further $75,000 was paid by a check dated September 11, 2026, bringing the total to $300,000 (**Exhibit R-7**). The Plaintiff does not seek to recover those payments in this action; he alleges them only to show that he was not evading the state court's authority. The court then read into the record a portion of its forthcoming order finding that the Plaintiff's "concerns over whatever steps law enforcement may take as a result of allegations made against him do not constitute a legal excuse

for defendant's repeated failures to appear in this matter," and stated that "this hearing will be held in person." (Exhibit R-5, at 7:21–8:10.)

54. The court's law clerk also reported that, in response to a letter from Defendant Lieberman stating that he was unaware of any pending imminent arrest or incarceration, the Plaintiff had forwarded communications from the Scarsdale Police Department indicating that they had a warrant for his arrest. (*Id.* at 3:8–12.)

55. This episode fits the pattern alleged throughout this Amended Complaint: an off-the-record communication with the court by Defendants; a Friday setting that fell on the Plaintiff's Sabbath despite an express warning on the record; and Defendants' use of the Plaintiff's resulting absence to urge, before a newly assigned Justice, that he be treated as a fugitive and a defaulter. It occurred within the limitations period and after Justice Puerto's June 6, 2025 order.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (FREE EXERCISE OF RELIGION) BROUGHT PURSUANT TO 42 U.S.C. § 1983

*(Against All Defendants)*

56. The Plaintiff repeats, reiterates, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint with the same force and effect as if fully set forth herein.

57. The First Amendment to the United States Constitution, made applicable to the states and their joint actors through the Fourteenth Amendment, guarantees the absolute right to the Free Exercise of Religion. This sacred constitutional mandate prohibits state actors, and private individuals acting under color of state law, from imposing special disabilities on the basis of religious status, acting with hostility toward sincerely held religious beliefs, or forcing a citizen to choose between adhering to their faith and preserving a fundamental liberty or property interest. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33 (1993); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (holding that government action that forces an individual to choose between following the precepts of their religion and forfeiting fundamental benefits abandons the neutrality mandated by the First Amendment).

58. At all times relevant to this Amended Complaint, Defendant Lieberman—and, from the time it appeared in the state-court action, Defendant Lieberman & Lieberman, PLLC—acted under color of state law. By engaging in improper, off-the-record *ex parte* communications with presiding state-court justices (including the 2022 communications for which the New York State Commission on Judicial Conduct publicly admonished Justice Quiñones, and Defendants' January 2026 *ex parte* call to the court), and by deliberately leveraging the coercive scheduling, contempt, and warrant powers of the

Westchester County Supreme Court, Defendant Lieberman became a willful, joint participant in a state-sponsored deprivation of the Plaintiff's civil rights. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). The state-court machinery served as the instrument of deprivation, but Defendant Lieberman was its malicious, active architect.

59. Defendants' joint action with state officials rests on specific facts, not labels. Justice Quiñones himself initiated undisclosed communications with Defendant Lieberman and, after Defendant Lieberman complained privately to another justice, told Defendant Lieberman that he would be insulating his court attorney from "all of his and his law firm's cases"—including the Plaintiff's—without disclosing that arrangement to the Plaintiff (Section A; **Exhibits A**, **B**). Justice Puerto, while voicing open hostility toward the Plaintiff's Sabbath observance, adopted the in-person appearance setting that Defendant Lieberman requested: when he asked that the parties be there "not on a virtual" but "in person," the court answered "Yes" and ordered the Plaintiff's personal appearance (Section C; **Exhibit P-2**, at 11:10–21; **Exhibit Q**, at 13:13–14:16). In January 2026, when Defendant Lieberman asked the newly assigned Justice to confirm that a personal appearance meant "not on a virtual," the court again answered "Yes" (**Exhibit R-1**, at 16:14–17); and, after a "brief off the record conversation" that day among the court's law clerk, Defendants' firm and the children's attorney,

the court scheduled a conference on the Plaintiff's Sabbath (**Exhibit R-4**). There, Defendant Lieberman, in the Plaintiff's absence, urged that the Plaintiff be treated as a fugitive and asked the court to reiterate in writing that he must appear in person, and the court announced that the hearing would be held in person (Section D; **Exhibit R-5**). Where this Amended Complaint alleges that Defendant Lieberman also misled a court on a particular occasion, that allegation is offered as evidence of his intent and, to the extent it is inconsistent with joint action on that occasion, is pleaded in the alternative under Fed. R. Civ. P. 8(d)(2)–(3); it does not negate the joint action alleged on the other occasions.

60. Acting with overt, discriminatory animus, Defendant Lieberman systematically weaponized the Plaintiff's strict Jewish observance including Sabbath (Shabbat) and High Holy Days. Despite possessing actual, documented knowledge of the Plaintiff's religious obligations and his geographic residence in Israel, Defendant Lieberman engineered procedural traps expressly designed to collide with the Plaintiff's sacred observances.

61. The burdens alleged here did not flow from a neutral rule of general applicability. Each resulted from individualized, discretionary decisions about when and how to serve papers, when to file, and when to proceed—made by Defendants, or adopted by the court at their request or with their

participation—with actual knowledge of the Plaintiff's Sabbath observance and timed to fall on it. A regime of individualized, discretionary decisions is not generally applicable. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). Nor was the burden incidental: Defendants used the absences that the Plaintiff's observance compelled as a basis for seeking adverse relief against him—urging, at a conference held on his Sabbath, that he be treated as a fugitive and a defaulter (**Exhibit R-5**)—and openly questioned whether his observance was genuine (**Exhibit F**).

62. The documentary record is replete with Defendant Lieberman's unconstitutional joint actions. From the February 2022 Friday afternoon habeas corpus ambush, in which the papers were emailed at 4:56 p.m. on the eve of the Sabbath and every other method of service was timed to land on the Sabbath itself (**Exhibit I**), to the Friday, June 9, 2023, 2:00 p.m. conference set on May 3, 2023 (**Exhibit K**), to the explicit demand made on October 10, 2025 (**Exhibit P-2**, at 11:10–16) for an in-person appearance on the holiday of Simchat Torah in October 2025 (**Exhibit Q**), to the January 23, 2026 conference convened on the Plaintiff's Sabbath, at which Defendants urged fugitive-disentitlement relief in his absence (**Exhibit R-5**), Defendant Lieberman successfully utilized the coercive power of the state court to impose an unconstitutional condition upon the Plaintiff. Defendant Lieberman forced the Plaintiff into an impossible,

extortionate dilemma: either desecrate the Sabbath and abandon his core religious tenets to defend his parental rights, or maintain his religious adherence and suffer devastating procedural defaults *in absentia*.

63. Defendant Lieberman's conduct transcended mere procedural maneuvering and crossed into actionable, unconstitutional religious hostility. The United States Supreme Court has emphatically ruled that the Constitution cannot tolerate overt hostility toward a citizen's religious beliefs. *See Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 634 (2018). On October 10, 2025, Defendant Lieberman silently ratified and actively exploited the state court's overt hostility when the presiding justice screamed "Stop. Okay. Stop. Stop." to silence the Plaintiff, having already cut off his explanation of his pre-Shabbat preparation window and why an observant Jew cannot work until the minute sundown begins. (**Exhibit P-2**, at 8:10–17, 10:6–7, 10:24).

64. Furthermore, this hostility constitutes a continuous, ongoing policy. On Thursday, May 7, 2026, at 10:25 p.m., Defendant Lieberman filed a sanctions cross-motion with a Monday 9:30 a.m. return date, deliberately consuming the Plaintiff's Sabbath to cripple his response time. When the Plaintiff sought equitable relief to be heard, Defendant Lieberman cemented his discriminatory animus on the public record in a June 2, 2026 letter (**Exhibit F, NYSCEF Doc. No. 1707**), overtly mocking the Plaintiff by stating: *"Assuming that Defendant*

*does actually observe the Sabbath and is actually located in Israel as he claims..."* By actively inviting the state court to treat the Plaintiff's religious observance as suspect, Defendant Lieberman violated the core constitutional mandate of religious neutrality. To assist the Court in mapping the precise evidentiary record to the strict elements of a 42 U.S.C. § 1983 First Amendment claim, the Plaintiff respectfully submits the following **First Amendment Deprivation Matrix**:

| **Element of § 1983 Free Exercise Claim** | **Evidentiary Proof of Defendant's Liability** | **Constitutional Jurisprudence** |
|---|---|---|
| **Protected Conduct** | Plaintiff's sincere observance of the Orthodox Jewish Sabbath and High Holy Days, which strictly prohibit work, travel, and litigation. | The Free Exercise Clause protects against indirect coercion or penalties imposed upon religious practice. *Sherbert v. Verner*, 374 U.S. at 404. |
| **Color of State Law / Joint Action** | Defendant Lieberman's *ex parte* communications (CJC Admonishment), the January 2026 *ex parte* call to the court (**Exhibits R-4**, **R-5**), and his exploitation of the state court's coercive scheduling power. | Private parties who corruptly conspire with or manipulate the judiciary act under color of state law. *Dennis v. Sparks*, 449 U.S. at 27-28. |
| **Unconstitutional Burden** | Engineering the 83-hour Thursday-to-Monday response window (May 2026) to deliberately consume the Plaintiff's 25-hour Shabbat. | Conditioning the preservation of fundamental rights upon the abandonment of religious precepts violates the First Amendment. |
| **Discriminatory Animus** | Mocking the Plaintiff's faith on the public record | Subtle or overt departures from religious neutrality |

| | | |
|---|---|---|
| | ("Assuming that Defendant does actually observe the Sabbath...") (**Exhibit F, NYSCEF Doc. 1707**). | demonstrate impermissible hostility and actionable animus. *Masterpiece Cakeshop*, 584 U.S. at 634, 638. |

65. The devastating effect of Defendant Lieberman's unconstitutional strategy is best understood through the strict-scrutiny framework of the *Sherbert* test. To visually demonstrate how Defendant Lieberman manufactured this deprivation of civil rights, the Plaintiff submits the following **Unconstitutional Condition Diagram**:


The Fundamental Right
Plaintiff's Right to Meaningful Access to the Courts and Parental Liberty
The Constitutional Protection
First Amendment Right to the Free Exercise of Religion
Defendant Lieberman's Section 1983 Deprivation
The Unconstitutional Dilemma Orchestrated by Defendant
Option 1: Comply with the Manipulated State Court Schedule
Option 2: Observe the Sabbath
Plaintiff Must Break the Sabbath and Violate Core Religious Tenets
Defendants Seek Defaults and Adverse Relief in Plaintiff's Religiously Compelled Absence
The Legal Conclusion
Forcing this Choice Constitutes an Actionable Deprivation of Civil Rights under 42 U.S.C. § 1983

66. As a direct, proximate, and foreseeable result of the Defendants' malicious and unconstitutional conduct undertaken under color of state law, the Plaintiff has suffered and continues to suffer severe and irreparable harm. This includes the coerced violation and burdening of his religious observance; severe emotional distress, including fear of arrest; out-of-pocket costs, including emergency travel; and the expense of responding to proceedings conducted in his religiously compelled absence.

**COUNT II: VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (DUE PROCESS AND EQUAL PROTECTION) BROUGHT PURSUANT TO 42 U.S.C. § 1983**

*(Against All Defendants)*

67. The Plaintiff repeats, reiterates, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint with the same force and effect as if fully set forth herein.

68. The Fourteenth Amendment to the United States Constitution guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The bedrock of Procedural Due Process is the fundamental right to be heard "at a meaningful time and in a meaningful manner," which strictly prohibits state actors from erecting insurmountable, arbitrary, or bad-faith barriers to a litigant's participation. *See Armstrong v. Manzo*, 380 U.S. 545, 552

(1965). Concurrently, the Equal Protection Clause mandates that the state and its joint actors must govern with absolute neutrality. A state-court apparatus cannot permit individualized scheduling exemptions for secular or personal reasons while simultaneously refusing equivalent exemptions for sincerely held religious obligations. *Cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (holding that policies permitting individualized exemptions cannot be utilized to discriminate against religious exercise).

69. Defendant Lieberman, acting under color of state law as a willful, joint participant with the Westchester County Supreme Court judiciary (*Dennis v. Sparks*, 449 U.S. 24 (1980)), systematically and intentionally deprived the Plaintiff of both his Procedural Due Process and Equal Protection rights. Recognizing that the Plaintiff's physical residence in Israel and observance of the Jewish Sabbath created a rigid, immutable temporal boundary, Defendant Lieberman weaponized the state court's scheduling and enforcement apparatus to convert the Plaintiff's constitutionally protected religious observance into a lethal procedural liability.

70. **The Due Process Deprivation:** Defendant Lieberman engaged in a continuous, unconstitutional campaign of "litigation ambushes" deliberately calibrated to deny the Plaintiff a meaningful opportunity to be heard. By manipulating the timing of *ex parte* emergency habeas corpus filings—such as withholding email

service until 4:56 p.m. on a Friday, approximately one hour before the Sabbath began where the Plaintiff was located, while timing FedEx delivery and door-affixing to fall on the Sabbath itself, with a Monday morning return date (**Exhibit I**)—Defendant Lieberman intentionally engineered a scenario where the Plaintiff was legally, temporally, and spiritually paralyzed. In January 2026, after an *ex parte* call to the court, Defendants used a conference held on the Plaintiff's Sabbath to urge, in his absence, that he be treated as a fugitive and a defaulter (**Exhibit R-5**). This due process blockade actively continued through May 2026, when Defendant Lieberman intentionally filed a sanctions cross-motion at 10:25 p.m. on a Thursday for a Monday morning return date. By deliberately compressing the response window to encompass the Plaintiff's 25-hour Shabbat observance, Defendant Lieberman deprived the Plaintiff of a meaningful opportunity to oppose by the return date. Defendant Lieberman then exploited the Plaintiff's resulting, religiously induced absences to seek and obtain adverse relief against him in absentia. These deprivations were not the "random, unauthorized" acts of low-level employees: they were effected through the scheduling and adjudicative authority of presiding justices, the ultimate decision-makers in those proceedings, so the availability of state-court remedies does not, by itself, satisfy due process. *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465–66 (2d Cir. 2006).

71. **The Equal Protection Deprivation:** In executing his joint action with the state court, Defendant Lieberman created and enforced a brazenly unconstitutional double standard. Defendant Lieberman routinely utilized the state court to accommodate his own personal preferences while aggressively punishing the Plaintiff for asserting identical rights. In May 2023, Defendant Lieberman asked for, and the presiding justice kept, an afternoon setting explicitly so that he could attend his grandchild's secular "moving up" ceremony (**Exhibit K**). Yet, when the Plaintiff requested the exact same basic scheduling accommodations to observe the Sabbath and High Holy Days from Israel, Defendant Lieberman became actively hostile. He mocked the Plaintiff's faith on the public record (**Exhibit F, NYSCEF Doc. No. 1707**), actively guided the state court to revoke the Plaintiff's virtual access for an appearance set on Simchat Torah, and silently ratified the court's screaming interrogation regarding the exact minute of sundown (**Exhibit P-2**, at 8:10–17, 11:2–21). The Plaintiff does not proceed on a "class of one" theory: he alleges that he was singled out for adverse treatment because of his religious observance, an impermissible consideration. *See LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). To assist the Court in navigating the precise intersection of Defendant Lieberman's bad-faith conduct and the resulting constitutional deprivations, the Plaintiff submits the following **Fourteenth Amendment Deprivation Matrix**:

| **Constitutional Guarantee** | **Defendant Lieberman's Actionable Conduct** | **The Resulting § 1983 Civil Rights Violation** |
|---|---|---|
| **Procedural Due Process** (Right to Meaningful Access) | Engineered the May 2026 83-hour Thursday-to-Monday scheduling trap to deliberately overlap with the Plaintiff's Sabbath blackout. | Rendered the Plaintiff's fundamental right to notice and a hearing illusory, manufacturing an unconstitutional default *in absentia*. |
| **Equal Protection** (Discriminatory Animus) | Mocked the Plaintiff's religious adherence on the record (**Exhibit F**, NYSCEF Doc. 1707) to encourage a newly assigned judge to view the Plaintiff's faith as suspect. | Demonstrated actionable, discriminatory animus, confirming the scheduling conflicts were an intentional weapon rather than an administrative accident. |
| **Equal Protection** (Secular vs. Religious Needs) | Asked the court to keep an afternoon setting to attend a secular, personal event (grandchild's ceremony) but attacked the Plaintiff's religious preparation window. | Violates the *Fulton* principle that government mechanisms cannot prioritize secular, personal convenience over sincerely held religious obligations. |

72. The totality of the evidentiary record reveals a calculated scheme wherein Defendant Lieberman corrupted the neutral administration of justice,

transforming the state court into a targeted weapon of religious disenfranchisement. To visually expose the discriminatory asymmetry applied by Defendant Lieberman under color of state law, the Plaintiff submits the following **Asymmetrical State Action Diagram**:



The Discriminatory Application of State Court Power
State Court Procedural and Scheduling Discretion
How Did Defendant Lieberman Utilize Joint Action?
When Defendant Sought Relief
When Plaintiff Sought Religious Relief
When Plaintiff Sought Religious Relief
May 2023: Asks to keep the afternoon setting for Grandchild's Ceremony
Oct 2025: Plaintiff requests Sabbath/ Simchat Torah accommodation
May/June 2026: Plaintiff requests relief from 83-hour Shabbat Trap
Lieberman Demands In-Person Appearance and Ratifies Hostility
Lieberman Mocks Plaintiff's Faith on the Record NYSCEF 1707
State Court Accommodates Defendant Lieberman
Plaintiff's Requests Met with In-Person Mandate (Oct. 2025) and Mockery (June 2026)
The Section 1983 Constitutional Deprivation
Defendant Secures Tactical Advantage
Plaintiff is Stripped of Liberty, Property, and Due Process
Proof of Animus and Unequal Treatment
Actionable Violation of the 14th Amendment Equal Protection and Due Process Clauses

73. As a direct, proximate, and foreseeable result of the Defendants' unconstitutional joint actions under color of state law, the Plaintiff was unlawfully stripped of his meaningful opportunity to participate in the underlying litigation.

74. This deprivation of Due Process directly and proximately caused the Plaintiff to suffer catastrophic and irreparable harm, including the coerced violation and burdening of his religious observance, severe emotional distress, and out-of-pocket costs.

75. Because the Defendants' actions were intentional, malicious, undertaken in bad faith, and executed with a reckless and callous disregard for the Plaintiff's federally protected constitutional rights, the Plaintiff is entitled to compensatory damages, nominal damages, punitive damages, declaratory relief, and costs and, to the extent Plaintiff retains counsel, attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

76. The Plaintiff repeats, reiterates, and incorporates by reference each and every allegation contained in the preceding paragraphs of this Amended Complaint as if fully set forth herein.

77. Rule 8(a)(3) of the Federal Rules of Civil Procedure requires a pleading to contain a demand for the relief sought. As exhaustively detailed in the

allegations and causes of action above, Defendants Mitchell P. Lieberman, Esq., and Lieberman & Lieberman, PLLC, acting under color of state law and in corrupt joint action with the state judiciary, have engaged in a continuous, calculated, and malicious campaign to strip the Plaintiff of his fundamental constitutional rights.

78. The Defendants' unconstitutional weaponization of the Plaintiff's Jewish observance, their deliberate orchestration of procedural defaults *in absentia*, and their leverage of the arrest warrant have caused the Plaintiff catastrophic harm. This harm includes, but is not limited to, the coerced violation and burdening of his religious observance, severe emotional distress (including fear of arrest), out-of-pocket costs, and the expense of responding to proceedings conducted in his religiously compelled absence. To assist the Court in aligning the specific constitutional injuries suffered by the Plaintiff with the federal statutory remedies mandated by 42 U.S.C. § 1983, the Plaintiff respectfully submits the following **Constitutional Remedies and Quantifiable Damages Matrix**:

| **The Constitutional Injury Sustained** | **The Factual Basis of the Harm** | **The Demanded Federal Remedy** |
|---|---|---|
| **Burdening and Coerced Violation of Religious Observance** | Defendants timed service, filings, and proceedings to fall on the Plaintiff's Sabbath and used his resulting absences against him (**Exhibits I, R-5**). | **Compensatory Damages:** Damages for emotional distress, out-of-pocket costs (including emergency travel), and the expense of responding to proceedings conducted in his religiously compelled absence; nominal damages for each violation. |
| **Deprivation of First Amendment Free Exercise** | Defendant Lieberman engineered the 83-hour Shabbat trap **(May 2026; Exhibit E)** and publicly mocked the Plaintiff's religious adherence (**Exhibit F, NYSCEF Doc. 1707**). | **Declaratory & Punitive Damages:** A federal declaration of unconstitutionality, paired with massive punitive damages to punish and deter malicious religious hostility. |

79. Because the Defendants acted with evil motive, actual malice, and a callous, reckless indifference to the Plaintiff's federally protected rights, the imposition of substantial punitive damages is both factually warranted and legally necessary to punish the Defendants and to deter other private attorneys from corrupting the state judicial apparatus. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (authorizing punitive damages in § 1983 actions where the defendant's conduct is shown to be motivated by evil motive or intent, or involves reckless or callous indifference to the federally protected rights of others).

80. **WHEREFORE**, Plaintiff Steven Baharestani respectfully prays that this Honorable Court enter judgment against Defendants Mitchell P. Lieberman, Esq., and Lieberman & Lieberman, PLLC, jointly and severally, and grant the following relief:

A. **DECLARATORY RELIEF:** Enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, declaring that the Defendants' actions, policies, and practices—specifically their joint action with the state judiciary to weaponize the Plaintiff's religious observance and manufacture procedural defaults—violate the First and Fourteenth Amendments to the United States Constitution, without reviewing, vacating, or modifying any state-court order or judgment;

B. **COMPENSATORY DAMAGES:** Award Plaintiff compensatory damages in an amount to be determined at trial by a jury, to fully compensate the Plaintiff for the coerced violation and burdening of his religious observance, severe emotional distress, and out-of-pocket costs proximately caused by the Defendants' unconstitutional conduct, and, at a minimum, nominal damages for each violation of Plaintiff's constitutional rights;

C. **PUNITIVE DAMAGES:** Award Plaintiff punitive damages in an amount to be determined at trial by a jury, sufficient to punish the

Defendants for their malicious, willful, and oppressive conduct, and to serve as a definitive deterrent against the future weaponization of religious observance under color of state law;

D. **ATTORNEYS' FEES AND COSTS:** Award Plaintiff his costs and disbursements and, to the extent Plaintiff retains counsel, reasonable attorneys' fees incurred in the prosecution of this action, pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988;

E. **PRE- AND POST-JUDGMENT INTEREST:** Award Plaintiff pre-judgment and post-judgment interest at the highest rate allowed by law; and

F. **FURTHER RELIEF:** Grant such other, further, and different relief as this Court deems just, proper, and equitable under the circumstances.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff Steven Baharestani hereby respectfully demands a trial by jury on all issues of fact and claims so triable in this Amended Complaint.

Dated: October 13, 2026

Respectfully submitted,

/s/ Steven Baharestani

STEVEN BAHARESTANI, Plaintiff *Pro Se*
Tennis Pl. 3, Akko, Israel · stevenbahar@gmail.com · 516-967-9876

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, **STEVEN BAHARESTANI**, hereby declare and verify under penalty of perjury under the laws of the United States of America that I am the Plaintiff in the within action; that I have read the foregoing Amended Complaint and know the contents thereof; and that the factual allegations contained therein are true and correct to the best of my own personal knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Executed on October 13, 2026.

**STEVEN BAHARESTANI**
*Plaintiff, Pro Se*
Tennis Pl. 3
Akko, Israel
516-967-9876
stevenbahar@gmail.com